UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| GAYLON BOYD, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:16CV252 RLW |
| | ) |
| NANCY BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of Defendant's final decision denying Plaintiff's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth below, the Court reverses the decision of the Commissioner and remands for further proceedings.

## I. Procedural History

On July 7, 2015, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning March 1, 2015 due to stage 4 COPD; asthma; bronchitis; back problems; frequent urination; carpel tunnel syndrome in both hands; arthritis in shoulders; high blood pressure; and insomnia. (Tr. 72, 143-59) Plaintiff's claims were denied on December 1, 2015, and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 48-76, 81-82) On June 16, 2016, Plaintiff testified at a hearing before the ALJ. (Tr. 25-47) In a

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further actions needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

decision dated July 26, 2016, the ALJ determined that Plaintiff had not been under a disability from March 1, 2015 through the date of the decision. (Tr. 9-20) On September 9, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the June 16, 2016 hearing, Plaintiff was represented by counsel, who gave an opening statement. Counsel stated that no medical source statements were provided in the case; however, Plaintiff was capable of less than the full range of sedentary work due to chronic obstructive pulmonary disease and arthritis. Upon questioning by the ALJ, Plaintiff testified that he lived in a mobile home with his wife, two of his daughters, and his grand-baby. Plaintiff had a tenth grade education. He previously worked as a construction worker and an assembly line worker. He testified that his construction jobs mainly involved concrete work, where he lifted 100 pounds. His assembly line jobs required lifting about 25 pounds. (Tr. 31-33)

Plaintiff stated that he was unable to return to his construction or assembly line jobs because he could not stand for very long. He was unable to lift with or raise his left arm without pain. In addition, he needed to use the bathroom every 15 to 20 minutes due to prostate problems. He had trouble breathing in the heat. Plaintiff testified that his disability onset date of March 1, 2015 coincided with the date he was laid off because of his breathing, back, and shoulder problems. Plaintiff stated that he was unable to do any work due to his disability and inability to read or write. He testified that his doctor prescribed inhalers and would not let Plaintiff return to work. (Tr. 34-35)

Plaintiff stated that he quit smoking two weeks before the hearing. He previously smoked up to 2 ½ packs of cigarettes a day but began to slowly reduce the number of daily

2

cigarettes until he quit. Plaintiff testified that he received income from his wife's disability stemming from back surgery. (Tr. 35-36)

Plaintiff's attorney also questioned Plaintiff about his prior work and his impairments. Plaintiff stated that he was unable to perform construction work because he could not breathe or lift. He was unable to perform the work he used to do, and after he was laid off, the companies never called him back. With regard to his prostate problems, Plaintiff testified that he took two medications to strengthen his prostate. Plaintiff did not have health insurance or receive Medicaid. He had a $4 plan for prescriptions. Plaintiff's medications included a muscle relaxant; Cyclobenzaprine; Flomax; Hydroxyzine; Metoprolol; Naproxen; Norco; and Prednisone. Plaintiff testified that he did not like taking Prednisone because it made him feel funny. His inhalers caused him to be jittery, shaky, and lightheaded. They also caused headaches. (Tr. 36-38)

Plaintiff further testified that he was able to stand for 15-20 minutes before his back and legs began to hurt, causing him to sit. He was unable to lift his left arm and could not properly pick up his grand-baby. Plaintiff stated that he could lift a gallon of milk with his left arm with pain. However, he could not lift the milk over shoulder level. Plaintiff had no problem lifting with his right arm. Walking caused pain in Plaintiff's back and knees. Walking also caused shortness of breath. Plaintiff stated that he could walk 100 feet but then needed to stop and catch his breath. He had difficulty with reading and writing. (Tr. 38-40)

Plaintiff testified that he could do dishes and help with the laundry. He was unable to push a vacuum because his back hurt. He tried to work in the garden but could only do so for a few minutes before needing to sit down. Plaintiff stated that gardening caused breathing difficulties and back pain. During the day, Plaintiff sat on his porch, drank coffee, and walked to

3

his garden. Plaintiff stated that he had trouble with frequent urination his whole life. While working at Briggs and Stratton, Plaintiff walked off the assembly line because he was not allowed to use the bathroom. Plaintiff testified that he would be unable to perform any jobs in the national economy because he could not push carts at Walmart due to pain or work in any type of heat or humidity. The frequent need to use the bathroom also prevented him from working. (Tr. 40-42)

A vocational expert ("VE") also testified at the hearing. The VE classified Plaintiff's past relevant work as construction worker, which was semiskilled and heavy work; and assembler, which was semiskilled and medium work. The ALJ then asked the VE to assume a hypothetical person the same age, education, and past relevant work as the Plaintiff. The individual could lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours in an 8-hour work day; sit for 6 hours in an 8-hour work day; push or pull with the same weight limits for lifting and carrying; avoid concentrated exposure to inhaled pulmonary irritants; avoid concentrated exposure to high temperatures and humidity; and understand, remember, and carry out simple instructions and tasks. In addition, the person was unable to lift his left arm above shoulder level. The VE testified that this individual could not return to the past relevant work performed by Plaintiff. However, the hypothetical person could work in small products assembly I, collator, and small products II bench assembly positions. (Tr. 42-44)

Plaintiff's attorney also questioned the VE and asked the VE to assume the individual would miss 2 or 3 days of work due to breathing issues and COPD. The VE testified that all jobs would be eliminated. Further, frequent urination problems would also eliminate all jobs. The ALJ left the record open for Plaintiff to obtain a medical source statement from the clinic he visited and concluded the hearing. (Tr. 44-46)

4

An October 25, 2015 Function Report – Adult completed by Plaintiff's wife indicated that Plaintiff had difficulty breathing even while sitting. His inhaler made him feel shaky and lightheaded. He experienced sharp, burning pain from the middle of his back to his buttocks. During the day, Plaintiff took pain medication and used his inhaler when he woke up. If he performed any work he went very slowly because he became short of breath. Prior to his condition, Plaintiff could pour concrete and walk without losing his breath. Plaintiff coughed during the night. He had trouble bathing because he was unable to catch his breath in the shower. Plaintiff was able to prepare simple meals daily. His wife performed the cooking, however. Plaintiff could do laundry every couple of days. He was unable to perform house or yard work. Plaintiff went outside every day, and he was able to drive. He did not shop or pay bills. Plaintiff enjoyed hunting but could not do this often because he was unable to walk distances due to his breathing problems. He also enjoyed watching TV and eating dinner with his immediate family. Plaintiff did not participate in any other social activities. Plaintiff stated that his conditions affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, stair climb, complete tasks, and use hands. He explained that these activities caused shortness of breath and back pain. Plaintiff reported that he could not walk any distance before needing to rest for 3 to 4 minutes. He could pay attention for only 5 minutes due to pain and lack of breath. Further, Plaintiff was unable to follow written instructions. However, he could follow spoken instructions. He was able to get along with authority figures but could not handle stress or changes in his routine. (Tr. 241-48)

In a Missouri Supplemental Questionnaire dated October 25, 2015, Plaintiff reported that his driver's license had been suspended. Plaintiff's wife stated that she believed Plaintiff had

5

ruptured discs in his back. He was unable to walk upstairs or walk to the front door due to COPD. Plaintiff did not have pain medications because they could not afford them. (Tr. 251)

In a Disability Report – Appeal, Plaintiff reported that on July 15, 2015, he experienced new medical conditions including: Carpal Tunnel in both hands; numbness, tingling, and pinched nerve in hands and arms; weakness; degenerative disc disease; arthritis in both shoulders; constant throbbing pain; insomnia; fatigue during the day; memory and concentration problems; COPD with frequent coughing spells; and possible respiratory failure. (Tr. 296)

### III. Medical Evidence

On August 2, 2014, Plaintiff presented to the Poplar Bluff Regional Medical Center emergency room with a chief complaint of ethyl alcohol abuse. Plaintiff left the ER against medical advice prior to examination. (Tr. 345-48) Plaintiff returned to the ER on August 4, 2014 for complaints of altered mental state and vomiting. Tests and examination were normal, and Plaintiff was discharged with a diagnosis of heat exhaustion. (Tr. 328-44)

On December 31, 2014, Plaintiff underwent a left shoulder x-ray which showed degenerative changes at the left acromioclavicular joint consistent with degenerative arthritis. (Tr. 325-26) Chest x-rays taken that same date indicated no definitive acute cardiopulmonary process but hyperexpanded lungs suggesting chronic obstructive pulmonary disease ("COPD"). (Tr. 323-24)

Plaintiff saw Gary Ward, D.O., on January 2, 2015 for follow-up care to discuss sleeping pills and his chest x-ray. Plaintiff reported shortness of breath, wheezing, coughing up blood, muscle aches and weakness, arthralgias/joint pain, back pain, and swelling of the extremities. He reported no chest pain or arm pain on exertion. Dr. Ward assessed acute exacerbation of chronic obstructive airway disease, osteoarthritis, and insomnia. (Tr. 362-65) Plaintiff returned to Dr.

6

Ward on January 19, 2015 for a pain management follow-up. Plaintiff requested different pain medication. Dr. Ward assessed chronic pain, COPD, osteoarthritis, and insomnia. He prescribed Norco for pain. (Tr. 359-62)

On April 4, 2015, Plaintiff saw Dr. Ward for a prescription refill. He complained of lower back pain and bilateral shoulder pain. Plaintiff reported severe COPD and worsening pain level of 8/10 with or without medication. Dr. Ward increased Plaintiff's Norco dosage. (Tr. 356-59) Plaintiff returned to Dr. Ward on May 20, 2015 and reported that his pain was stable with Norco and Voltaren. He continued to complain of very limiting COPD with fatigue, cough, and wheezing. (Tr. 353-56) On June 15, 2015, Plaintiff followed-up with Dr. Ward for a medication refill. He complained of muscle cramps, arthralgias/joint pain, and back pain, along with numbness and tingling. Plaintiff reported that his back pain radiated to his bilateral legs, and he experienced intermittent numbness to his bilateral posterior legs. Dr. Ward noted tenderness and limited range of motion in Plaintiff's lumbar area. Dr. Ward diagnosed insomnia, osteoarthritis, chronic pain, hypertensive disorder, and chronic low back pain. (Tr. 350-53)

A bronchospasm evaluation performed on November 6, 2015 revealed mild airway obstruction. (Tr. 371-76) An x-ray of the lumbar spine on November 30, 2015 showed no acute abnormality or interval change with mild degenerative change at L1-L2, unchanged from a previous lumbar spine x-ray on April 3, 2012. (Tr. 380)

On April 14, 2016, Plaintiff saw Srimannarayana Marella, M.D., for a follow-up visit. Dr. Marella noted that Plaintiff's asthma and COPD were uncontrolled. While prednisone decreased coughing spells, Plaintiff complained of wheezing, shortness of breath with exertion, and chest tightness. Plaintiff reported drinking beer every day and smoking. Dr. Marella assessed asthma and chronic low back pain. (Tr. 384-87) Plaintiff returned to Dr. Marella on

May 23, 2016 for medication refills. Physical exam showed no localized tenderness in Plaintiffs back. Plaintiff's benign prostatic hypertrophy ("BPH") had improved with finasteride, but Dr. Marella advised Plaintiff to also fill and take his Flomax as prescribed. (Tr. 381-84)

Dr. Marella completed a Physical Medical Source Statement ("MSS") on June 16, 2016. Dr. Marella diagnosed chronic low back pain, BPH, asthma/COPD, and left shoulder pain. Plaintiff's prognosis was fair. Plaintiff's symptoms included chronic low back pain radiating to bilateral lower extremities, shortness of breath and wheezing, and increased urinary frequency. Dr. Marella opined that Plaintiff's low back pain level was 8/10 and worsened with prolonged standing, bending, and pushing. Plaintiff's left shoulder pain worsened with movement. Objective findings included dyspnea, wheezing, decreased breath sounds, left shoulder tenderness with abduction, and decreased range of motion and tenderness in the lumbar spine. Emotional factors did not contribute to the severity of Plaintiff's symptoms. (Tr. 388)

Dr. Marella opined that Plaintiff could walk less than one city block without rest or severe pain; sit 20 minutes before needing to get up; stand 10 minutes before needing to shift positions; and sit and stand less than 2 hours in an 8-hour work day. Dr. Marella further stated that Plaintiff required a job that permitted shifting positions and included walking every 20 minutes for 5 minutes at a time. Plaintiff required unscheduled breaks every hour lasting 10 minutes due to pain, frequent urination, and shortness of breath. Dr. Marella opined that Plaintiff could lift less than 10 pounds frequently, 10 pounds occasionally, 20 pounds rarely, and 50 pounds never. Plaintiff could rarely twist, stoop, crouch/squat, climb stairs, or climb ladders. Further, he had significant limitations with reaching, handling, or fingering. Plaintiff was capable of moderate stress – normal work, but his impairments would likely produce good days and bad days. Dr. Marella opined that Plaintiff would be absent from work more than four days

8

per month. Dr. Marella stated that the signs, clinical findings, and test results pertaining to Plaintiff's impairments were consistent with the symptoms and functional limitations set forth in Dr. Marella's evaluation. (Tr. 389-91)

## IV. The ALJ's Determination

In a decision dated July 26, 2016, the ALJ found that Plaintiff was insured through December 31, 2020. He had not engaged in substantial gainful employment since March 1, 2015, his alleged onset date. The ALJ determined that Plaintiff had severe impairments including asthma/COPD, degenerative joint disease of the left shoulder, and mild degenerative disc disease of the lumbar spine. However, he did not have an impairment of combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 9-13)

Upon careful consideration of the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work reduced by nonexertional limitations. The ALJ limited Plaintiff's RFC for light work to lifting or carrying 20 pounds occasionally and 10 pounds frequently; standing, walking, or sitting 6 hours in and 8-hour work day; and pushing or pulling within the lifting limitations. Plaintiff needed to avoid concentrated exposure to inhaled pulmonary irritants and concentrated exposure to high temperatures and humidity. He could not lift his left arm above shoulder level. The ALJ further found that Plaintiff was unable to perform his past relevant work. However, in light of Plaintiff's younger age, limited education, past work experience, and RFC, the ALJ determined that there were jobs in the national economy which Plaintiff could perform. These jobs included small products assembler I, collator, and small products assembly II (bench assembly). Thus, the ALJ concluded that Plaintiff had not been under a disability from March 1, 2015 through the date of the decision. (Tr. 13-20)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe physical or mental impairment or combination of impairments which meets the duration requirement; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment. *Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. *Id.*

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the *Polaski*[2] factors and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in

---

[2]  The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner*, 646 F.3d at 558 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

## VI. Discussion

In his brief in support of the Complaint, Plaintiff raises two arguments. First Plaintiff asserts that the ALJ failed to resolve a possible conflict between the VE testimony and the *Dictionary of Occupational Titles* (DOT). Plaintiff's second argument is that the ALJ improperly discounted the opinion of Dr. Marella, Plaintiff's treating doctor. The Defendant maintains that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Plaintiff first argues that the jobs identified by the VE exceeded the limitations contained in the ALJ's hypothetical, thus creating an unresolved conflict with the DOT. Defendant, on the other hand, asserts that the job descriptions in the DOT identified by the VE did not conflict with the RFC determined by the ALJ and the related hypothetical question.

Specifically, Plaintiff contends that the ALJ found Plaintiff was limited to work that involved no use of his left arm above the shoulder level, which limitation the ALJ included in the hypothetical question. However, Plaintiff argues that the jobs identified by the VE, small products assembler I, collator, and small products assembler II (bench assembler) involve frequent reaching for assembler I and collator, and constant reaching for assembler II. Plaintiff further states that "reaching" encompasses overhead reaching. Thus, Plaintiff asserts that these jobs exceed the limitations contained in the ALJ's hypothetical and create an unresolved conflict with the DOT. Defendant responds that the job descriptions involve only forward reaching and

12

not overhead reaching such that no conflict exists between Plaintiff's RFC and the identified job titles.

The Court agrees with Plaintiff and finds that substantial evidence does not support the ALJ's determination. The Court notes that the ALJ asked and the VE testified that the vocational testimony was consistent with the DOT, indicating no conflict. *See Jones v. Astrue*, 619 F.3d 963, 977-98 (8th Cir. 2010) (noting that the ALJ is required to ask whether there is a conflict between the VE evidence and information provided in the DOT). "However, the responsibilities of the ALJ do not end there." *Moore v. Colvin*, 769 F.3d 987, 989 (8th Cir. 2014). In *Moore*, the Eighth Circuit Court of Appeals stated:

> If there is an "apparent unresolved conflict" between VE testimony and the DOT, the ALJ must "elicit a reasonable explanation for the conflict" and "resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the DOT information." SSR 00–4p, 2000 WL 1898704, at *2–4 (Dec. 4, 2000). The ALJ is not absolved of this duty merely because the VE responds "yes" when asked if her testimony is consistent with the DOT.

*Moore*, 769 F.3d at 989-90. The *Moore* court also found an apparent unresolved conflict existed where the ALJ limited the plaintiff to occasional reaching bilaterally yet the DOT and SCO[3] listed the jobs recommended by the VE as requiring reaching. *Id.* at 989. The *Moore* court noted that neither the DTO nor the SCO specified the direction of reaching for those jobs. *Id.*; *see also Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) ("While the ALJ gave specific directions to the VE before he testified, the record does not reflect whether the VE or the ALJ even recognized the possible conflict between the hypothetical describing a claimant who could reach overhead only occasionally, and DOT job listing # 737.687–026 indicating that a check-weigher job involved constant reaching.").

---

[3] The *Selected Characteristics of Occupations Defined* ("SCO") is a companion volume to the DTO.

Here, Defendant acknowledges that the jobs offered by the VE involve reaching. However, Defendant contends that these jobs require only forward reaching and not overhead reaching. (Def.'s Brief p. 12, ECF No. 18) The Defendant offers no support for the proposition that no conflict exists because the identified jobs do not involve overhead reaching. As found by the Eighth Circuit in *Moore*, "[a] VE must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation." *Moore*, 769 F.3d at 990 (citation omitted). "Absent adequate rebuttal, however, VE testimony that conflicts with the DOT 'does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform.'" *Id.* (quoting *Kemp*, 743 F.3d at 632).

In this case, the ALJ limited Plaintiff to no lifting of his left arm above shoulder level. (Tr. 43) According to the SCO, the positions of assembler, small products I (DOT 706.684-022) and collator operator (DOT 208.685-010) require frequent reaching,[4] and the job of assembler, small products II requires constant reaching.[5] As found by the *Moore* court, the DOT and SCO do not specify the direction of reaching. *Id.* at p 989. Thus, the positions identified by the VE may require reaching overhead, and the ALJ did not elicit testimony from the VE to resolve the apparent conflict between those positions, as defined by the DOT and the SCO, and the Plaintiff's RFC as determined by the ALJ. *See Moore*, 769 F.3d at 990; *Kemp*, 743 F.3d at 633. Because the ALJ failed to resolve this conflict, the VE's testimony "does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the

---

[4] U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* 127, 277 (1993).
[5] *Id.* at 278.

14

existence of other jobs in the economy a claimant can perform." *Kemp*, 743 F.3d at 632. Therefore, the Court must reverse the decision and remand the case to the Commissioner for further proceedings to determine at step five of the sequential evaluation process whether jobs exist in the national economy that Plaintiff is capable of performing. *Id.* at 633; *see also Rouse v. Colvin,* No. 4:15–CV–466–CEJ, 2016 WL 866087 (E.D.Mo. Mar. 7, 2016) (reversing and remanding the ALJ's decision because the ALJ did not elicit testimony from the VE to resolve the conflict between the identified jobs and plaintiff's RFC, thus failing to meet the Commissioner's burden of showing jobs in the economy which plaintiff could perform).

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order. An appropriate Order of Remand shall accompany this Memorandum and Order.

Dated this 21st day of March, 2018.

*[signature: Ronnie L. White]*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**